# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON RAY BROWN,

        Defendant-Appellant.

UNPUBLISHED
May 24, 2016

No. 326430
Kent Circuit Court
LC No. 14-007021-FH

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant, Brandon Ray Brown, was convicted of possessing less than 50 grams of cocaine with intent to deliver (second offense), MCL 333.7401(2)(a)(*iv*) and MCL 333.7413(2), carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony firearm) (second offense), MCL 750.227b, and sentenced as a fourth-offense habitual offender, MCL 769.12, to five years' imprisonment for the felony firearm conviction as well as consecutive sentences of six to 50 years' imprisonment for the possession of cocaine conviction, three to 50 years' imprisonment for the CCW conviction, and three to 50 years' imprisonment for the felon in possession conviction. We affirm.

While patrolling through a neighborhood known for elevated levels of gun and drug activity during the early morning hours of July 18, 2014, law enforcement officers observed a silver Cadillac with a defective brake light make several peculiar turns and accelerations in a manner that led the officers to "believe the vehicle was intentionally avoiding contact with [the] patrol car at that time." Recognizing this driving pattern as odd, the officers followed the Cadillac and, eventually, observed the Cadillac come to a complete stop at an intersection. While stopped at the intersection, the officers activated the patrol vehicle's spotlight, which illuminated the interior of the Cadillac. Inside the Cadillac, the officers were able to observe two frontseat passengers and one backseat passenger. While the frontseat passengers remained relatively calm, the backseat passenger behaved differently. "[H]e was looking around back and forth as if he was nervous" and repeatedly reached into his pockets and bent toward the floor. The officers exited their patrol vehicle, approached the Cadillac, and asked the backseat passenger for his name. The backseat passenger answered that his name was Lawrence Brown. It was not—it was Brandon Ray Brown, our defendant.

-1-

One of the officers asked defendant to exit the vehicle, and defendant subsequently consented to a body search. While defendant, as well as the other two passengers, were outside of the Cadillac, a third officer arrived at the scene and noticed a semi-automatic handgun on the backseat floorboard through the Cadillac's window. In a subsequent search of the Cadillac, the officers located a bag of crack cocaine placed between two basketballs and near clothing on the floorboard as well, which was later determined to contain 13 2.55-gram bags of cocaine. A second bag of crack cocaine was also found in a compartment on the front passenger-side door, which was later determined to contain 13 2.83-gram bags of cocaine. On defendant's person, the officers also found two cell phones, which, in their experience, was indicative of drug dealing. A forensic scientist with the biology unit at the Michigan State Police Lab tested the handgun for DNA, and she determined that defendant was a major donor at 15 of 16 markers that were tested. As it relates to the 16th marker, while defendant was not determined to be a major donor, the forensic scientist could not exclude defendant as a DNA contributor either. Defendant was eventually charged, convicted, and sentenced as described above. This appeal followed.

On appeal, defendant argues that he is entitled to a new trial because trial counsel's performance constituted ineffective assistance of counsel. Specifically, defendant contends that trial counsel was ineffective in three ways. First, defendant claims, trial counsel was ineffective in "fail[ing] to investigate secondary and tertiary transfer of DNA[.]" Second, defendant claims, trial counsel was ineffective in failing "to present an expert who could educate the jury regarding" (1) "[h]ow easily DNA can transfer from person to person and then to object," (2) "[h]ow little of Mr. Brown's DNA was present because the DNA analysis could only identify 15 out of the 16 markers on a DNA profile," and (3) the fact that "[t]here was evidence of another person's DNA on the gun, but it did not contain enough markers to qualify for analysis." "This scientific information," he asserts, "was critical to the defense of Mr. Brown because there were no fingerprints on the gun, magazine, bullets or cocaine." Third, defendant claims, trial counsel was ineffective because her "lack of understanding of DNA transfer prevented her from objecting to the prosecutor's misstatement of the only way DNA can be found on an object." "There can be no strategic explanation," he asserts, "for failing to educate the jury as to how easily DNA can be innocently transferred to an object, and there can be no strategic reason for failing to object to the prosecution's presumption that Mr. Brown had to have touched the firearm for his DNA to be present." "[H]ad the jury had this information," defendant concludes, "the jury would have concluded that there was an insufficient link between Mr. Brown and the firearm and cocaine to establish possession."

At the outset, we conclude that defendant has abandoned each of the claims quoted above on appeal.

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it. [*Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).]

Defendant has not primed the pump in this case. Instead, defendant, in the five-page argument section of his brief on appeal, merely sets forth the applicable law and states, in what can only be described as a conclusory fashion, a handful of actions counsel could have taken because they might have made a difference at trial. Defendant does not, for example, provide any scientific or legal support for his claim. At the very least, it is our view that an appellant claiming ineffective assistance of counsel based on trial counsel's failure to understand scientific evidence has the burden of presenting some form of scientific or legal authority to support his or her broad, scientifically reliant assertions. See, e.g., *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). In this case, defendant simply does not.

Nevertheless, in addressing defendant's claims on appeal, we conclude that each lacks merit. To prevail on an ineffective-assistance claim, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Because this issue was not properly raised before the trial court, in a post-judgment motion, or on appeal, our review is limited to mistakes apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). There is a strong presumption of effective assistance, and it is the defendant's heavy burden to overcome this presumption. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). While it is true that trial counsel is responsible for preparing, investigating, and presenting all defenses that may make a difference in the outcome of the trial, *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009), it is equally true that trial counsel is afforded wide discretion regarding trial strategy, *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007), including decisions to call or not call witnesses, *People v Payment*, 285 Mich App 181, 190; 774 NW2d 714 (2009), and "[t]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's performance with the benefit of hindsight," *Petri*, 279 Mich App at 411 (citation and internal quotation marks omitted).

It is defendant's position that trial counsel's performance was objectively unreasonable because she lacked the adequate understanding of DNA evidence to effectively challenge, whether it be through cross-examination, calling an expert, objections, or otherwise, the prosecution's DNA expert. The record belies this position. During trial, trial counsel thoroughly cross-examined the prosecution's DNA expert. Trial counsel questioned the expert as to the frequency in which people shed skin cells, the size and amount of skin cells required to develop a DNA profile, whether a handshake alone could possibly result in a transfer of DNA, whether it was possible to determine the amount of time DNA evidence remained on an object, whether the expert could actually determine if the DNA at issue was directly deposited or transferred, and how the expert prevented contamination in testing for skin cell DNA. Trial counsel was then able to use the various answers to these types of questions in her closing argument in an attempt to create a reasonable doubt in the jurors' minds. Further, while defendant now claims that a defense expert should have been called as well, it is unclear what, if any, other testimony such an expert could have provided. In fact, trial counsel's ability to get the prosecution's expert to admit various possibilities as to how defendant's DNA may have arrived on the handgun was, perhaps, even more effective than doing so though a different expert. Additionally, trial counsel's decision not to object to the prosecution's closing argument may very well have been strategic, *Odom*, 276 Mich App at 415, and this appears especially true in light of the opportunity

trial counsel then had to argue that the prosecution's position did not accurately reflect its own testimony and was instead relying on the jury to take a "leap" in finding defendant guilty. In sum, the record simply does not reflect objectively unreasonable performance on behalf of trial counsel. *Pickens*, 446 Mich at 303; *Strickland*, 466 US at 687.

But, even if we assume that it did, defendant is not entitled to a new trial because he was not prejudiced by any of the alleged shortcomings. He claims that, had counsel's performance not been unreasonable, "the jury would have concluded that there was an insufficient link between Mr. Brown and the handgun and cocaine to establish possession." Perhaps intentionally, however, defendant's argument forgets the fact that he was found seated near the handgun and cocaine at issue; that law enforcement observed him moving his hands, bending over, and looking around nervously when the vehicle was stopped; that another individual in the vehicle denied having the handgun or cocaine in his possession and implicated defendant in his testimony; and that he gave a false name to law enforcement. Although defendant concludes that this evidence constituted "an insufficient link" between he, the handgun, and the cocaine, our conclusion is not the same. In sum, defendant has not demonstrated that that he was deprived of his right to a fair trial. *Pickens*, 446 Mich at 303; *Strickland*, 466 US at 687.

Accordingly, because defendant has not demonstrated that trial counsel's performance fell below an objective standard of reasonableness or that he was deprived of his constitutional right to a fair trial as a result of the allegedly unreasonable performance, he is not entitled to appellate relief. To the extent defendant also asks this Court to remand this matter pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), we decline his request because it was improperly made, MCR 7.211(C)(1), and because he has failed to "point to any area in which further elucidation of the facts might advance his position," *People v McMillan*, 213 Mich App 134, 142; 539 NW2d 553 (1996).

Affirmed.


/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood